UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH JACKSON | ) | CASE NO. 1:18CV1713 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| NANCY A. BERRY HILL, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Elizabeth Jackson Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his October 16, 2017 decision in finding that Plaintiff was not disabled because she could perform her past relevant work (Tr. 528-542). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

**I.     PROCEDURAL HISTORY**

The Plaintiff, Elizabeth Jackson, filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on February 3, 2012, alleging disability as of May 13, 2011 (Tr. 214-226). Her claims were denied, initially on May 1, 2012, and upon reconsideration dated August 20, 2012 (Tr. 123-126, 128-130). Plaintiff, thereafter, filed a request for hearing on September 25, 2012 (Tr. 135-136), and an initial hearing was held on August 8, 2013 before an Administrative Law Judge (hereinafter "ALJ") (Tr. 103-118). The ALJ issued a Notice of Decision-

1

Unfavorable on August 26, 2013 (Tr. 103-118).

Plaintiff appealed the ALJ's decision to the Appeals Council on September 12, 2013, who remanded Plaintiff's claim for benefits for a new hearing (Tr. 119-122, 177). On January 12, 2015, a second hearing was held before the ALJ, who issued a Notice of Decision-Unfavorable on March 6, 2015 (Tr. 11-25). Plaintiff appealed the decision of the ALJ to the Appeals Council on March 6, 2015, who affirmed the denial of benefits on April 22, 2016 (Tr. 1-10, 608-613). On June 26, 2016, Plaintiff appealed her denial of benefits into the U.S. District Court, where a joint remand was approved remanding Plaintiff's claim for a new hearing (Tr. 556-557, 614-627). On October 12, 2016, the Appeals Council issued an order remanding Plaintiff's claim solely for review of the period prior to March 7, 2015, noting that Social Security had found Plaintiff disabled as of March 7, 2015, based on a subsequent application for benefits (Tr. 552).

A third hearing was held on August 2, 2017 before the ALJ. On October 16, 2017, the ALJ issued a Notice of Decision-Unfavorable to Plaintiff (Tr. 528-542). Plaintiff objected to the ALJ's decision and filed a request for review of the hearing decision on November 6, 2017 (Tr. 549). This request was denied by the Appeals Council on May 24, 2018 (Tr. 515-520), leaving the decision of the ALJ as the final decision of the Commissioner. Plaintiff then filed this judicial action pursuant to 42 U.S.C. § 405(g) and 1383(c).

## II. STATEMENT OF THE FACTS

Plaintiff was born on May 12, 1955 and was fifty-six years old on the alleged disability onset date (Tr. 84). Plaintiff has a high school education (Tr. 296), and was found to have past relevant work as a cashier-checker (light exertion, semi-skilled, SVP3), teacher's aid (light exertion, semi-skilled, SVP3), and van driver (light exertion, semi-skilled, SVP3) (Tr. 541).

2

## III.    SUMMARY OF MEDICAL EVIDENCE

On February 7, 2011, Plaintiff was examined by Dr. Mark Roth of Kaiser Permanente for complaints of right-sided low back pain as a result of falling on ice on the day prior (Tr. 376, 378-379). She reported that she was unable to go to work due to her pain, and was diagnosed with a lumbar sprain (Tr. 379).

On July 7, 2011, Plaintiff returned to Dr. Roth with complaints of right-sided low back and tingling in her right leg (Tr. 384). Plaintiff stated that she was having problems with her balance in recent months, and stated that she had to quit her job due to the low back pain (Tr. 384). Plaintiff was diagnosed with scoliosis and referred to orthopedic surgeon Dr. Josephine Fernando (Tr. 352). Her physical examination revealed marked limitation of movements (Tr. 354). X-rays showed severe dextroscoliosis of the thoracic spine and degenerative disc disease of the lumbar spine (Tr. 355). Plaintiff was diagnosed with scoliosis and referred to Dr. Eppig (Tr. 355).

On August 30, 2011, Plaintiff returned to Dr. Roth following a rear-end motor vehicle accident the day prior, in which she was thrown forward and backward during the accident (Tr. 389). Plaintiff was found to have reduced cervical range of motion and was diagnosed with whiplash (Tr. 390). An x-ray of her cervical spine was interpreted as normal (Tr. 363).

On September 20, 2011, Plaintiff was examined by Dr. Michael Eppig for her scoliosis (Tr. 474). The physical examination revealed an elevated right shoulder and prominent right hump (Tr. 474). Dr. Eppig prescribed a full scoliosis fusion (Tr. 475). However, Plaintiff was apprehensive regarding the surgery, and declined (Tr. 475).

On January 7, 2012, Plaintiff returned to Dr. Fernando and stated that Dr. Eppig had recommended surgery of her thoracic spine (Tr. 358). Plaintiff stated that she had declined surgery

3

(Tr. 358). Plaintiff was instructed to continue her current medications and home exercise program (Tr. 359).

On February 3, 2011, Plaintiff was examined by Fiona Ju, CNP, for complaints of bilateral knee pain (Tr. 447, 450). Physical examination revealed suspected fatting tissue over the bilateral knees (Tr. 450). Plaintiff was prescribed bilateral knee braces, physical therapy, arthritic cream, and x-rays of her bilateral knees (Tr. 451). X-rays were interpreted as normal (Tr. 424-425, 457).

From May 14, 2012 through July 9, 2012, Plaintiff underwent physical therapy for her bilateral knee pain (Tr. 396-418). During physical therapy, Plaintiff was noted to have 4/5 strength in her bilateral lower extremities (Tr. 402, 406, 409, 414), slight edema of the bilateral knees (Tr. 402), forward lean of trunk (Tr. 403), and gait abnormalities, including inadequate pelvis rotation (Tr. 403), knee wobble (Tr. 403), and inadequate trunk extension (Tr. 403).

On October 3, 2012, Plaintiff returned to Dr. Roth with complaints of upper and lower back pain and right knee pain (Tr. 459). Dr. Roth noted that her mobility was quite impaired, and that she can only walk short distances (Tr. 461). Dr. Roth also noted that Dr. Eppig had offered back surgery, but that the surgery would be "very lengthy and would require very long rehabilitation" (Tr. 461). The physical examination revealed that Plaintiff walked with a very slow and slightly ataxic gait (Tr. 462). Dr. Roth diagnosed scoliosis and knee pain, and prescribed Plaintiff a cane to assist with mobility and balance (Tr. 419, 462).

Plaintiff returned to Dr. Roth on April 9, 2013 and complained of worsening back and knee pain (Tr. 466). In addition, Plaintiff complained of pain in her bilateral arms and ribs (Tr. 466). Physical examination revealed a slow, slightly ataxic gait, the use of a cane for balancing when walking and marked dextroscoliosis of her thoracolumbar spine (Tr. 466). Dr. Roth prescribed

4

Plaintiff handrails for her bathtub (Tr. 467).

On April 15, 2013, Dr. Roth completed both a physical and mental assessment of Plaintiff's abilities (Tr. 420-423). Regarding Plaintiff's physical abilities, Dr. Roth opined that Plaintiff was limited to: lifting five pounds occasionally and two pounds frequently; standing/walking one hour in an eight-hour day, half an hour without interruption; sitting seven hours in an eight-hour day, two hours without an interruption; rarely climbing, stooping, crouching, crawling, reaching, and pushing/pulling; occasionally balancing; and frequently performing fine or gross manipulation (Tr. 420-421). Dr. Roth also stated that Plaintiff would require a sit/stand/walk at will option, and would require a half hour of extra rest breaks during the workday (Tr. 421). Dr. Roth determined that Plaintiff's pain would interfere with her concentration, take her off task, and cause absenteeism (Tr. 421). Regarding her mental limitations, Dr. Roth opined that Plaintiff would be limited to occasionally maintaining attention and concentration for extended periods of two-hour segments, and complete a normal workday and workweek without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 422).

On April 17, 2014, Plaintiff returned to Dr. Roth, complaining of right knee pain (Tr. 483). Physical examination again revealed a slow, slightly ataxic gait, the use of a cane for balancing when walking, and marked dextroscoliosis of her thoracolumbar spine (Tr. 484). On September 29, 2014, Plaintiff returned to Dr. Roth complaining of a productive cough and back pain (Tr. 498). Plaintiff was diagnosed with scoliosis, lumbosacral neuritis, allergic rhinitis, rash, and an acute upper respiratory infection (Tr. 498).

On September 30, 2014, Dr. Roth completed a second assessment of Plaintiff's physical

5

abilities; the conclusions were identical to his April 9, 2013 assessment (Tr. 479).

On May 6, 2015, Plaintiff returned to Dr. Roth complaining of back pain (Tr. 763). Physical examination revealed that Plaintiff walked with a bent posture (Tr. 763). Plaintiff was diagnosed with scoliosis and chronic pain (Tr. 763). On December 16, 2015, Plaintiff was again examined by Dr. Roth for complaints of back pain (Tr. 770). Plaintiff was diagnosed with scoliosis, lumbar neuritis, chronic pain syndrome, rash, and allergic rhinitis (Tr. 771).

## IV. **SUMMARY OF TESTIMONY**

At her first hearing, Plaintiff testified that her back pain was her biggest problem since a motor vehicle accident in August 2011 (Tr. 36). Plaintiff stated that her pain limited her to standing fifteen minutes, and she was unsure if she could stand two hours out of an eight-hour day (Tr. 34, 42). Plaintiff also stated that she was limited to lifting two pounds (Tr. 34, 42). She testified that she stopped working due to not being able to stand for longer periods (Tr. 31). As a result of her pain, Plaintiff testified that she cannot do any of her household maintenance, cannot drive, needs help getting dressed, has problems with her legs giving out, and elevates her legs four times a day when sitting (Tr. 33, 35, 40, 43). Plaintiff stated that she had been treated in the past with injections, knee braces, and physical therapy, and was currently taking pain medications that did not help (Tr. 36-37, 44). Plaintiff also testified that surgery had been proposed for her scoliosis, consisting of pins and rods, with an eighteen- to twenty-four-month recovery period, with subsequent therapy and bracing (Tr. 31, 39). However, Plaintiff stated her physician stated that it would be risky, and she was scared to proceed (Tr. 31, 35).

At her January 12, 2015 hearing, Plaintiff testified that her physician, Dr. Fernando, advised her that she could not work, and that her back was "too bad" for surgery (Tr. 55-56). Plaintiff stated

6

that her back had worsened and that she now had pain in her shoulder and arm (Tr. 64). Plaintiff testified that she uses a cane at all times since 2011 that was prescribed by a doctor (Tr. 65). She testified that her daughter helps bathe her and helps her get dressed (Tr. 66). She stated that she has a hard time standing up from a sitting position on the toilet (Tr. 66). Plaintiff described her pain as ranging from the top of her neck to her toes (Tr. 67, 72). She lays down after taking her medications, props her legs up on a pillow, and falls down when walking (Tr. 71, 74).

At her August 2, 2017 hearing, Plaintiff stated that her pain had worsened and was unbearable (Tr. 565). She stated that she had been experiencing muscle spasms since the beginning of her claim (Tr. 566). Plaintiff testified that walking and standing made her pain worse and she could not carry a gallon of milk (Tr. 567-568).

The vocational expert, Millie Droste, testified that Plaintiff had past relevant work as a cashier-checker, teacher's aid, and van driver (Tr. 541). Ms. Droste testified that Plaintiff could return to her past relevant work as a teacher's aid and cashier checker (Tr. 573-576).

## V. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits and supplemental security income. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *See* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1,

7

> a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social*

*Security,* 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

**VII.    ANALYSIS**

Plaintiff asserts one issue:

WHETHER THE ALJ ERRED IN GRANTING LITTLE WEIGHT TO THE OPINIONS OF TREATING PHYSICIAN DR. ROTH.

The Court concludes in this case that the ALJ correctly considered and supported her analysis with good reasons. A treating medical source's opinion is entitled to controlling weight only if it is well supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see also Bogle*, 998 F.2d at 347-48. If the ALJ declines to give controlling weight to a treating source's opinion, the ALJ will determine the weight to attribute to the opinion based on a number of regulatory factors, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2)). The regulations "expressly require only that the ALJ's decision include "good reasons" for the weight given, "not an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F.App'x 802, 804 (6th Cir. 2011). The Sixth Circuit established that even a one-sentence rejection of a treating physician's opinion can be sufficient to satisfy 20 C.F.R. § 404.1527(c)(2)'s "good reason" requirement. *See Allen v. Comm'r of Soc. Sec.*,

9

561 F.3d 646, 651 (6th Cir. 2009).

Furthermore, in this case, the ALJ gave Dr. Roth's 2017 opinion no weight, gave his earlier 2013 and 2014 opinions little weight, and provided multiple good reasons for that assessment (Tr. 25-26). Dr. Roth opined the following regarding Plaintiff's physical abilities: Plaintiff could lift no more than five pounds occasionally and two pounds frequently; she could stand/walk for one hour total in a workday for thirty minutes at one time; Plaintiff could sit for seven hours total in a workday and two hours at one time; she could only occasionally balance and could rarely climb, stoop, crouch, crawl, or kneel; she could rarely reach or push/pull; she could not work around heights or noise; she experienced severe pain that would interfere with concentration, take her off-task, and cause absenteeism; and finally, Plaintiff would require an additional thirty minutes of rest time per workday (Tr. 420-421, 478-479, 782). Dr. Roth's only support for his opinions was that Plaintiff had severe scoliosis on exam with constant back pain. *Id.* In regard to Plaintiff's mental abilities, Dr. Roth opined that Plaintiff could frequently accomplish the following: understanding, remembering, and carrying out complex job instructions, and detailed, but not complex, job instructions; socializing; behaving in an emotionally-stable manner; relating predictably in social situations; managing her own funds; and her ability to leave her home (Tr. 423). Dr. Roth explained this was due to chronic pain (Tr. 423).

In giving less weight to these opinions, the ALJ reasoned that, "a review of the evidence indicated above, supports the conclusion that there is not substantial objective evidence such as examination finding and medical imaging which support Dr. Roth's standing or walking limitations." (Tr. 540). Earlier in the decision, the ALJ noted many of these normal findings. The ALJ noted that at an examination with Dr. Roth in August 2011, Plaintiff's reflexes, muscle strength, and gait were

10

all normal (Tr. 535-536 citing Tr. 441). The ALJ also noted that at a surgical consultation with Dr. Eppig in September 2011, Plaintiff's back was non-tender to palpation; her thoracic spine processes were non-tender; she was able to heel walk, toe walk, and single leg stand; she had normal tandem gait; normal dexterity and coordination; seated straight leg raising was negative; pulses were normal throughout; she had no edema or atrophy; Plaintiff had overall normal strength, sensation, pulses, and skin (Tr. 536 citing 474-475). In addition, the ALJ noted that at a physical therapy visit in May 2012, Plaintiff's gross motor coordination was intact, and she maintained standing balance without support (Tr. 538 citing Tr. 402). Hence, the ALJ correctly concluded that Dr. Roth's opinions were substantially inconsistent with the records as a whole (Tr. 540).

The ALJ also questioned the supportability of the opinion in two ways. First, the ALJ noted that the opinions were internally inconsistent (Tr. 540). The ALJ explained that, despite Dr. Roth's opinion that Plaintiff would be off task due to pain and that pain impaired Plaintiff's ability to concentrate, Dr. Roth contradictorily opined that Plaintiff could frequently perform intellectual functioning, make personal and social adjustments, and make frequent occupational adjustments with the exception of occasionally maintaining attention and concentration for extended periods and complete a normal workday/week (Tr. 540 citing Tr. 420-423). In addition, the ALJ reasoned that Dr. Roth did not support his opinions with any narrative except for his comment that Plaintiff's limitations were due to severe scoliosis on exam with constant back pain. *Id.*

In regard to both challenges to the opinion, the ALJ properly utilized the regulatory factors to discount the weight given to Dr. Roth's opinions. The Sixth Circuit has found that when an ALJ carefully summarizes the results of the claimant's objective medical records and then shows the opinion of the treating source was inconsistent with these facts, the decision to assign a treating source

11

opinion "not much weight" is supported by substantial evidence. *Dyer v. Social Sec. Admin.*, 568 F.App'x 422, 426-28 (6th Cir. 2014); *see Price v. Comm'r of Soc. Sec.*, 342 F.App'x 172, 175-76 (6th Cir. 2009); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007).

The Court concludes in this case that Plaintiff's sole argument is an evidentiary dispute about how the ALJ interpreted the facts at hand. The ALJ provided good reasons to support the weight given to Dr. Roth's opinion, and, thus, the ALJ's weighing of that opinion is hereby upheld.

## VIII. CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform her past relevant work, and, therefore, was not disabled. Hence, she is not entitled to DIB and SSI.

Dated: April 23, 2019                    */s/George J. Limbert*
                                          GEORGE J. LIMBERT
                                          UNITED STATES MAGISTRATE JUDGE